## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

HELEN LOPEZ, as Personal Representative of
Wrongful Death Estate of JIM CLARK,
Deceased,

      Plaintiff,

vs.                                                                    No. CIV 11-0227 JB/GBW

AMERICAN BALER COMPANY, a foreign corporation;
METSO CORPORATION, a foreign corporation;
METSO LINDEMANN, a foreign corporation;
LINDEMANN RECYCLING EQUIPMENT, INC.,
a foreign corporation; DON DICKASON and
MARTHA DICKASON, individually and
d/b/a dm DICKASON PERSONNEL SERVICES,

      Defendants,
and

LINDEMANN RECYCLING EQUIPMENT, INC.,

      Defendant/Third-Party Plaintiff,
vs.

CITY OF LAS CRUCES,

      Third-Party Defendant.

## **MEMORANDUM OPINION**[1]

    **THIS MATTER** comes before the Court on the City of Las Cruces's Motion to Dismiss,

filed May 25, 2012 (Doc. 35)("Motion to Dismiss").  The Court held a hearing on September 6,

2012.  The primary issue is whether the Court should dismiss Defendant/Third-Party Plaintiff

Lindemann Recycling Equipment, Inc.'s Third-Party Complaint for Indemnity or Contribution,

---

[1] On March 29, 2013, the Court issued an Order in which it granted the City of Las
Cruces's Motion to Dismiss, filed May 25, 2012 (Doc. 35) stating: "The Court will . . . at a later
date issue an opinion more fully detailing its rationale for this decision."  Doc. 63 at 1-2 n.1.
This Memorandum Opinion is the promised opinion for that motion.

filed April 26, 2012 (Doc. 32)("Third-Party Complaint"), against Third-Party Defendant City of Las Cruces, New Mexico, because Lindemann Recycling Equipment, Inc. ("Lindemann Recycling") has not stated a claim upon which it may seek indemnity or contribution from Las Cruces. For reasons stated on the record at the hearing and for further reasons herein, the Court will dismiss Lindemann Recycling's Third-Party Complaint. Lindemann Recycling seeks to implead Las Cruces so that Lindemann Recycling may indemnify Las Cruces if Lindemann Recycling is found jointly and severally liable for Las Cruces' negligence. New Mexico law does not allow for joint-and-several liability in negligence actions; rather, Lindemann Recycling would be held only comparatively negligent for the portion of damages that its actions or omissions caused, and not for any damages that Las Cruces' negligence caused. Additionally, although joint-and-several liability is available for Plaintiff Helen Lopez' claim of strict products liability against Lindemann Recycling, Lindemann Recycling has not shown that Las Cruces is an entity that engaged in putting an allegedly defective machine onto the market. Thus, Lindemann Recycling has not shown that it can be held jointly and severally liable for Las Cruces' fault because Lindemann Recycling has not shown that Las Cruces is a supplier of an allegedly defective machine. Accordingly, the law does not require Las Cruces to indemnify Lindemann Recycling, even if Lindemann Recycling is required to pay damages for strict products liability. The Court therefore finds that Lindemann Recycling has not shown that Las Cruces is liable to Lindemann Recycling, and the Court will dismiss Lindemann Recycling's Third-Party Complaint against Las Cruces.

## FACTUAL BACKGROUND

Lindemann Recycling is a dissolved entity, but before its dissolution, Lindemann Recycling was a manufacturer of equipment for, among other industries, the recycling and waste management industries.  See Third-Party Complaint ¶ 6, at 2-3.  The City of Las Cruces purchased a Ram II baler from Lindemann Recycling in 1996, for use at the South Central Solid Waste Authority transfer station and recycling center in Las Cruces.  See Third-Party Complaint ¶ 1, at 2; id. ¶¶ 17-20, at 4.  Waste Authority owns the transfer station, but Las Cruces hires the employees who work at the facility.  See Third-Party Complaint ¶¶ 13-14, at 3.  Las Cruces supervises, and is responsible for training, direct and temporary employees who work at the transfer station, including Jim Clark, a temporary employee.  See Third-Party Complaint ¶ 15, at 4.[2]  On November 16, 2007, Clark was working as a temporary employee at the transfer station when he climbed inside the Ram II baler at the transfer station.  See Third-Party Complaint ¶ 3, at 2.  Clark climbed into the Ram II baler to remove an obstruction; a Las Cruces employee turned on the machine while Clark was inside, and Clark subsequently died.  See Third-Party Complaint ¶ 3, at 2, id. ¶ 20, at 4; Letter to Mayor Miyagishima dated May 9, 2011 at 1, filed April 26, 2012, (Doc. 32-1)("Letter to Las Cruces Mayor").  Although Las Cruces possessed written safety policies for employees operating the Ram II baler, the employees operating the

---

[2] Lindemann Recycling does not define a "direct" employee, but rather uses the term as a contrast to a "temporary" employee.  Third-Party Complaint ¶ 15, at 4.  Lindemann Recycling is presumably drawing a distinction between Clark, a "new temporary or leased laborer who was contracted" to work at the transfer station, and "regular" workers at the transfer station. Complaint for Wrongful Death, Negligence, Personal Injuries and Damages, Infliction of Emotional Distress due to Negligence, and Products Liability ¶ 8, at 2-3, filed in First Judicial District Court, State of New Mexico, on Nov. 3, 2010, filed in federal court Mar. 14, 2011,(Doc. 1-1)("Lopez Complaint").  Lopez alleges that Clark was paid wages by dmDickason Personnel Services, which is also a Defendant in this action, in contrast to "regular" workers at the transfer station, who were presumably paid wages by Las Cruces.  Id.

Ram II baler on November 16, 2007, were not trained in those policies.  See Third-Party Complaint ¶¶ 21-22, at 4.

## PROCEDURAL BACKGROUND

Lopez filed a lawsuit for the wrongful death of Clark against Lindemann Recycling and other Defendants on November 3, 2012, in the First Judicial District Court for Santa Fe County, New Mexico.  See Lopez Complaint at 1; Defendant Lindemann Recycling Equipment, Inc.'s Notice of Removal of Action ¶ 1, at 1, filed March 14, 2011 (Doc. 1).  In her product liability claims against Lindemann Recycling, Lopez alleges that its Ram II baler was "inherently and unreasonably dangerous to intended and foreseeable users . . . was negligently designed, manufactured, distributed and presented for sale without the proper industry-standard safety mechanisms in place to prevent the kind of tragedy that took [Clark's] life."  Lopez Complaint ¶ 18, at 5.  Lindemann Recycling removed this action to federal court on March 24, 2011.  See Notice of Removal at 1.

Lindemann Recycling filed its Third-Party Complaint for indemnification and contribution against Las Cruces, which was not a party to Lopez' action, on April 26, 2012.  See Third-Party Complaint at 1.  Lindemann Recycling alleges that Las Cruces "had a nondelegable duty to exercise all due care and caution in maintaining the safety of the transfer station's premises, including the safety of the workers at the transfer station."  Third-Party Complaint ¶ 26, at 5.  Lindemann Recycling alleges that Las Cruces' nondelegable duty included a duty to exercise due care and caution in inspecting, servicing, and maintaining the Ram II baler, as well as to exercise care and caution in training, directing, and supervising the employees who used the Ram II baler.  See Third-Party Complaint ¶ 27, at 5.  Lindemann Recycling alleges that Las

Cruces' duty included exercising ordinary care in maintaining the safety of the transfer station for employees, such as Clark, by inspecting, servicing, and maintaining the Ram II baler, and training, instructing, directing and supervising the employees who used the Ram II baler.  See Third-Party Complaint ¶ 28, at 5.  Lindemann Recycling contends that Las Cruces breached its duties by, generally, failing to properly train the employees at the transfer station in appropriate safety procedures and the use of the Ram II baler, failing to provide a safe working environment for Clark, and permitting employees to "misuse and abuse the subject baler" by operating it in an unintended manner.  Third-Party Complaint ¶ 29, at 6.  Lindemann Recycling contends that Las Cruces' negligent acts or omissions are the cause of Clark's death.  See Third-Party Complaint ¶ 30, at 6.  Lindemann Recycling further contends that Las Cruces is vicariously liable for the conduct of its employees and agents in the course of their work, and that those employees' acts or omissions led to Clark's death.  See Third-Party Complaint ¶ 31, at 7.  Lindemann Recycling contends that, if Lopez succeeds in her lawsuit against Lindemann Recycling, Lindemann Recycling is entitled to full indemnification and contribution from Las Cruces in an amount proportional to Las Cruces' relative fault in causing Clark's death.  See Third-Party Complaint ¶ 32, at 7.

Las Cruces requests that the Court dismiss Lindemann Recycling's Third-Party Complaint.  See Motion to Dismiss at 1.  Las Cruces contends that Lindemann Recycling has failed to state a cause of action upon which relief can be granted, because, Las Cruces alleges, Lindemann Recycling does not have a right to indemnification or contribution under the facts it has alleged.  See Motion to Dismiss at 2; Memorandum in Support of Motion to Dismiss Third-Party Complaint Against the City of Las Cruces at 2, filed May 25, 2012 (Doc. 36)("Memo. in

Support of MTD").  Las Cruces argues that, even if the statements in Lindemann Recycling's Third-Party Complaint are true, Lindemann Recycling is not entitled to recovery from Las Cruces, because the exclusive remedy provision of the Worker's Compensation Act, N.M.S.A. 1978, §§ 52-1-1 - 70 ("Worker's Compensation Act") bars any right of Lindemann Recycling's to indemnification or contribution.  See Motion to Dismiss at 2; Memo. in Support of MTD at 3 (citing N.M.S.A. 1978, § 52-1-8).

Las Cruces argues that New Mexico law allows claims for contribution and indemnification only if the party seeking this relief "engaged in tortious conduct for which joint and several liability has been explicitly retained."  Memo. in Support of MTD at 3 (citing N.M.S.A. 1978, § 41-3A-1(A) - (G); Servants of the Paraclete, Inc. v. Great Am. Ins. Co., 866 F. Supp. 1560 (D.N.M. 1994)).  Las Cruces asserts that, if Lindemann Recycling is liable only for the damages design defects caused, and not for the damages that the neglect of others caused, then Lindemann Recycling cannot seek indemnification and contribution from a third-party for that party's negligent actions.  See Memo. in Support of MTD at 3.  Las Cruces asserts that it may be an issue of first impression whether the manufacturer or distributor of a defectively designed product is liable for all damages which the product caused, or whether, under the doctrine of comparative fault, the manufacturer or distributor is liable only for the damages that the design defect caused, and other tortfeasors are separately liable for any negligence that may have combined with the defect to cause damage.  See Memo. in Support of MTD at 4.  Las Cruces cites the Supreme Court of New Mexico's uniform jury instruction for the Comparative Negligence Defense that allocates liability both to the distributor of a defective product, and to the plaintiff for any fault directly attributable to his or her actions.  See Memo. in Support of

MTD at 4 (citing N.M.R.A., Civ. UJI 13-1427 (2009)).  Las Cruces further argues that New Mexico statutory law allocates joint-and-several liability for defective products only amongst those in the product's distribution chain.  See Memo. in Support of MTD at 5 (citing N.M.S.A. 1978, § 41-3A-1).  Las Cruces contends that tortfeasors not in the chain of distribution are not joint tortfeasors under New Mexico statutory law.  See Memo. in Support of MTD at 5-6.  Las Cruces argues that controlling New Mexico case law, as well as persuasive authority from other jurisdictions, makes a manufacturer of a defective product responsible only for the percentage of damages allocable to the defect, and concurrent tortfeasors are not jointly and severally liable, but rather the law apportions a percentage liability for their fault separately.  See Memo. in Support of MTD at 6-10.

Las Cruces also points to the Workers Compensation Act, and argues that Las Cruces is immune from tort liability as an employer of Clark, unless the Worker's Compensation Act establishes the liability.  See Memo. in Support of MTD at 10-11.  Las Cruces argues that Clark, as a temporary employee, could not bring a claim against Las Cruces in tort, because the Workers Compensation Act allows temporary employees only to bring claims for workers' compensation.  See Memo. in Support of MTD at 11-12.  Las Cruces argues, thus, that it cannot be liable for indemnification or contribution to Lindemann Recycling because Las Cruces can be liable to Clark only for workers compensation claims under the Worker's Compensation Act, and not for claims of tortious conduct.  See Memo. in Support of MTD at 12-13 (citing Beal v. S. Union Gas Co., 62 N.M. 38, 304 P.2d 566 (1956)).

The Court held a hearing on September 6, 2012.  See Transcript of Hearing, taken Sept. 6, 2012 ("Tr.").[3]  Las Cruces began by asserting that New Mexico has adopted comparative fault, and that under that regime the jury or finder of fact determines the degree of wrongdoing or fault of each party, and thus there is no need to seek indemnification or contribution, because each party is responsible only for the portion of damages the party caused.  See Tr. at 5:10-19 (Fitch). Las Cruces asserted, therefore, that the finder of fact would reduce the portion of fault for which Lindemann Recycling was liable by the negligence of any other party.  See Tr. at 5:19-22 (Fitch).  Las Cruces also asserted that joint-and-several liability is available under New Mexico law only where it has been specifically retained by statute, and that the plain language of New Mexico statutory law on product liability allows for joint-and-several liability only where an individual is both: (i) strictly liable for the defect; and (ii) within the chain of distribution.  See Tr. at 6:7-16 (Fitch).

Las Cruces further asserted that the New Mexico statute codifying the abolition of joint-and-several liability -- N.M.S.A. 1978, § 41-3A-1 -- enacted in 1986, after the Supreme Court of New Mexico adopted comparative negligence in Scott v. Rizzo, 96 N.M. 682, 634 P.2d 1234 (1981), demonstrates legislative support for comparative negligence.  See Tr. at 7:16-19 (Fitch). The Court inquired if the statute was referring to intentional torts where there was not true joint-and-several liability, or rather an apportionment of fault depending on "greater and lesser contributors."  Tr. at 7:20-8:2 (Court).  Las Cruces responded that it believes the statute applies to all cases in which comparative fault applies, and that New Mexico courts have applied comparative fault in negligence cases as well as in strict products liability cases.  See Tr. at 8:4-7

---

[3] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

(Fitch).  Las Cruces posited that the statute codified <u>Scott v. Rizzo</u>, and that the statute provided for comparative fault in the context of intentional torts.  <u>See</u> Tr. at 8:24-9:4 (Fitch).  The Court stated that it thought case law provided for joint-and-several liability in the context of intentional torts.  <u>See</u> Tr. at 9:23-10:1 (Court).  Las Cruces responded that may be true, and, if so, this case deals with negligence or strict liability, not intentional torts, and thus joint-and-several liability would nonetheless be inapplicable.  <u>See</u> Tr. at 10:4-7 (Fitch).

The Court inquired of Las Cruces whether Lindemann Recycling was truly not alleging an intentional tort against Las Cruces.  <u>See</u> Tr. at 10:8-10 (Court).  Las Cruces responded that all of the claims in Lindemann Recycling's Third-Party Complaint are based in negligence.  <u>See</u> Tr. at 10:11-20 (Fitch).  Las Cruces further argued that New Mexico case law allows for indemnification or contribution only in products liability cases for those in the supply chain, and that Las Cruces was not part of the supply chain, and therefore not liable to Lindemann Recycling for either indemnification or contribution.  <u>See</u> Tr. at 11:10-17 (Fitch).

Lindemann Recycling then addressed the Court, and agreed with Las Cruces that comparative fault applies in New Mexico.  <u>See</u> Tr. at 12:14-19 (Matzke).  Lindemann Recycling asserted that Lopez' claims sound in strict liability.  <u>See</u> Tr. at 12:20-22 (Matzke).  Lindemann Recycling argued that Las Cruces' motion is "premature," because Las Cruces is asking the Court to assume facts and draw inferences which would foreclose any potential right of Lindemann Recycling's to indemnification or contribution.  Tr. at 3:3-11 (Matzke).  Lindemann Recycling asserted that it is not relying on N.M.S.A. 1978, § 41-3A-1 for its claims against Las Cruces, and Lindemann Recycling stated that it is not alleging that Las Cruces is within the chain of supply as to fall within the terms of that statute.  <u>See</u> Tr. at 13:22-14:7 (Matzke, Court).

Lindemann Recycling asserted that it believes there is "no basis by which [Lindemann Recycling] should be held jointly and severally liable for any fault that is apportioned to somebody who is not in the chain of distribution and does not have a pending strict liability claim against them," but that it brought a complaint against Las Cruces because Lindemann Recycling believes there is no New Mexico authority that forecloses the possibility of Lindemann Recycling being held jointly and severally liable for Las Cruces' negligence.  Tr. at 15:1-14 (Matzke).  The Court responded that it understood the statute to allow for joint-and-several liability in intentional torts, but that the Supreme Court of New Mexico's opinion in Scott v. Rizzo, which adopted comparative negligence, governs negligence.  See Tr. at 16:1-10 (Court).  The Court noted that there is no strict liability claim against Las Cruces; rather, there is only a strict liability claim against Lindemann Recycling in the underlying suit.  See Tr. at 15:22-25 (Matzke, Court).  The Court asked Lindemann Recycling if there is any other exception besides that for intentional torts, that allows for joint-and-several liability, and Lindemann Recycling conceded that there is not.  See Tr. at 16:19-22 (Court, Matzke).  Lindemann Recycling argued, however, that it is concerned that it may be held liable for Las Cruces' actions or omissions in the future, because there is no explicit authority which states that Lindemann Recycling cannot be jointly and severally liable for Las Cruces' negligence.  See Tr. at 16:22-17:5 (Matzke).  The Court asked Lindemann Recycling if it would be satisfied dismissing Las Cruces if Lindemann Recycling had a ruling stating that Lindemann Recycling would not be held jointly and severally liable for Las Cruces' actions or omissions, and Lindemann Recycling responded that it would be satisfied with such a situation.  See Tr. at 17:6-20 (Court, Matzke).

The Court asked Lindemann Recycling if it would concede that it is not entitled to contribution or indemnification from Las Cruces for Lopez' claim of strict liability. <u>See</u> Tr. at 17:25-18:1 (Court). Lindemann Recycling responded that it had no basis to seek contribution or indemnification from Las Cruces under strict liability. <u>See</u> Tr. at 18:2-3 (Matzke). Lindemann Recycling, nonetheless, stated that its goal is to protect its right to contribution or indemnification from Las Cruces if Lindemann Recycling is found liable to Lopez. <u>See</u> Tr. at 18:13-21 (Matzke). Lindemann Recycling stated that it is worried a jury might find Lindemann Recycling liable jointly and severally for Las Cruces' actions or omissions, and thus it sought to preserve its right to contribution and indemnification from Las Cruces. <u>See</u> Tr. at 18:23-19:3 (Matzke). Lindemann Recycling stated that it would be acceptable to dismiss its claims against Las Cruces at the present time so long as Lindemann Recycling's potential future right to indemnification and contribution from Las Cruces is not precluded. <u>See</u> Tr. at 19:3-6 (Matzke).

The Court inquired under what authority Lindemann Recycling would be able to seek contribution and indemnification from Las Cruces, if Lindemann Recycling were found strictly liable to Lopez. <u>See</u> Tr. at 19:7-13 (Court). Lindemann Recycling responded that it is not asserting a right to indemnification or contribution from Las Cruces for any findings of strict liability on Lindemann Recycling's part; rather, Lindemann Recycling wants to protect its rights to seek indemnification and contribution if Lindemann Recycling were to be somehow found jointly and severally liable for Las Cruces' actions or omissions. <u>See</u> Tr. at 19:14-20:2 (Matzke).

Lopez then addressed the Court and argued that Lindemann Recycling's Third-Party Complaint is premature. <u>See</u> Tr. at 20:17-18 (Roach). Lopez asserted that, under strict-products liability, Lindemann Recycling might theoretically be liable for Las Cruces' misuse of

Lindemann Recycling's product if the misuse was foreseeable.  See Tr. at 21:2-12 (Roach).  The Court agreed that such is "always the nature of foreseeability in causation and issues in negligence," but stated that it did not see how joint-and-several liability would apply.  Tr. at 21:15-21, 23-24 (Court).  Lopez stated that, even if Las Cruces had been negligent and misused Lindemann Recycling's product, Lopez would still argue that Lindemann Recycling is strictly liable as the manufacturer.  See Tr. at 22:1-3 (Roach).  The Court stated that it could not preclude arguments from Lindemann Recycling that Las Cruces was negligent or from Lopez that Las Cruces' negligence was foreseeable.  See Tr. at 23:9-14 (Court).  Lopez asserted that she could see how Lindemann Recycling would want to keep Las Cruces in the case, perhaps to argue misuse of the product, but the Court responded that it did not see any law which would make a purchaser or consumer liable in strict-products liability.  See Tr. at 24:5-15 (Roach, Court).  Lindemann Recycling is not arguing, the Court noted, that Las Cruces misused the product; Lindemann Recycling's only fear is that it would be held jointly and several liability for Las Cruces' actions or omissions.  See Tr. at 25:10-15 (Court, Matzke)(the Court inquired if Lindemann Recycling is arguing that Las Cruces misused the Ram II baler, and Lindemann Recycling responded, "No, your Honor," but that its focus was joint-and-several liability).

Las Cruces then argued that there is "never going to be an instance in which [Lindemann Recycling] would have to pay for something that we did."  Tr. at 26:6-7 (Fitch).  Las Cruces asserted that carefully crafted jury instructions could be written so that a jury would not apportion fault to Lindemann Recycling for Las Cruces' negligence.  See Tr. at 26:10-14 (Fitch).  The Court stated that it was inclined to agree that there is not really a basis for Lopez to hold Lindemann Recycling jointly and severally liable, and so there would be no reason for Las

Cruces to be in the case, and the Court stated it was inclined to grant Las Cruces' Motion to Dismiss on that basis. <u>See</u> Tr. at 27:6-13 (Court).

The Court then turned to Las Cruces' arguments regarding the Workers Compensation Act. <u>See</u> Tr. at 27:14-15 (Court). Las Cruces stated that it believes a claim for indemnification or contribution cannot proceed if the employer is entitled to the protection of the worker's compensation exclusivity provision. <u>See</u> Tr. at 27:17-20 (Fitch). Las Cruces stated that, according to the language in Lopez' Complaint, Las Cruces was Clark's employer, and that there is no reason to believe that Las Cruces was not in compliance with the Worker's Compensation Act. <u>See</u> Tr. at 27:23-28:9 (Fitch).

Lindemann Recycling contended that Las Cruces' argument was "pure cart before the horse." Tr. at 28:11-13 (Matzke). Lindemann Recycling contended that Las Cruces was asking the Court to construe facts and draw inferences in its favor, which is the reverse of the standard that courts must employ on a motion to dismiss. <u>See</u> Tr. at 28:13-16 (Matzke). The Court asked Lindemann Recycling if it believed the issue was not whether the law was unclear, but that it was too early to determine if Las Cruces was an employer within the terms of the Worker's Compensation Act, and Lindemann Recycling said it believed the issue was the timing, and not the law. <u>See</u> Tr. at 28:25-19:2 (Court, Matzke). Lindemann Recycling further contended that courts normally determine if an entity has complied with the provisions of the Workers Compensation Act, and thus is immune from lawsuits, before determining if an entity is an employer within the terms of the Act. <u>See</u> Tr. at 29:4-12 (Matzke). Lindemann Recycling thus argued that, even if Las Cruces is an employer by the meaning of the Worker's Compensation Act, Las Cruces has not shown that it is entitled to immunity. <u>See</u> Tr. at 29:12-29 (Matzke).

The Court then inquired of Lopez which entity she alleges is Clark's employer -- Las Cruces, or Defendant Dickason Personnel Services; Lopez responded that she alleges that Dickason Personnel is the employer.  See Tr. at 30:7-12 (Court, Gilman).  Lindemann Recycling agreed that the Complaint names Dickason Personnel as the employer, and on that basis Lindemann Recycling again stated that it is too early to determine whether Las Cruces is an employer and immune from liability under the Worker's Compensation Act.  See Tr. at 30:20-24 (Matzke).  Las Cruces responded that Lindemann Recycling's Third-Party Complaint is "fairly replete with allegations" that would make Las Cruces Clark's employer, including alleging that Las Cruces operated the transfer station, hired employees, supervised employees at the transfer station, and was responsible for training both direct and temporary employees.  Tr. at 31:1-5 (Fitch).  Las Cruces contended that whether it employed Clark is a question of fact, which requires further inquiry.  See Tr. at 31:18-20 (Fitch).

## STANDARD FOR A MOTION TO DISMISS UNDER RULE 12(b)(6)

Under rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994).  The sufficiency of a complaint is a question of law, and when considering and addressing a rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor.  See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S.

308, 322 (2007); Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006); Hous. Auth. of Kaw Tribe v. City of Ponca, 952 F.2d 1183, 1187 (10th Cir. 1991).

A complaint challenged by a rule 12(b)(6) motion to dismiss does not require detailed factual allegations, but a plaintiff's burden to set forth the grounds of his or her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 546 (2007). See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(stating that a plaintiff's complaint must set forth more than a threadbare recital "of the elements of a cause of action, supported by mere conclusory statements"). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. at 545 (citation omitted). To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face. See Bell Atl. Corp. v. Twombly, 550 U.S. at 570; Mink v. Knox, 613 F.3d 995 (10th Cir. 2010). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007). The Tenth Circuit has stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." The allegations must be enough that, if

assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(internal citations omitted).

## **LAW REGARDING THIRD-PARTY COMPLAINTS UNDER RULE 14**

Although a plaintiff is generally free to select the party structure of the litigation, "a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff."   Fed. R. Civ. P. 14(a).   See Williams v. W. Laundry Equip. LLC, No. CIV-06-0569 JB/RLP, 2006 WL 4061164, at *7 (D.N.M., 2006)(Browning, J.)("[A]lthough the Federal Rules of Civil Procedure generally repose in the plaintiff great discretion in selecting the party structure of litigation, this discretion may be overridden in narrow circumstances." (internal citations omitted)).   Rule 14's plain language, as well as the rule's procedural requirements, indicate that only the parties who are defendants in the lawsuit may initiate a third-party lawsuit pursuant to rule 14.   See Fed. R. Civ. P. 14(a)(1) ("A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it.").

An impleader claim is proper only if it satisfies three requirements.   First, the third-party defendant must be liable to the third-party plaintiff; that a third-party defendant might be directly liable to the plaintiff is not grounds for impleader.   See Ocasek v. Hegglund, 673 F. Supp. 1084, 1088 (D. Wyo. 1987).   Second, the third-party defendant's alleged liability must be to the third-party plaintiff for the losses the third-party plaintiff sustained as a result of the plaintiff's claim. See Ocasek v. Hegglund, 673 F. Supp. at 1088 (holding third-party complaint was not proper under rule 14 when third-party defendant's liability to third-party plaintiff was not dependent on

defendant's liability to the plaintiff).   Third, the third-party defendant's liability must be derivative of the third-party plaintiff's liability.   In other words, a defendant may assert a third-party claim under rule 14(a) "only when the third party's liability is in some way dependent on the outcome of the main claim or when the third party is secondarily liable to defendant."   Wiatt v. State Farm Ins. Cos.,   560 F. Supp. 2d 1068, 1074 (D.N.M. 2007)(Browning, J.)(internal citations omitted).   "The mere fact that the alleged third party claim arises from the same transaction or set of facts as the original claim is not enough."   Ocasek v. Hegglund, 673 F. Supp. at 1088 (quoting 6 Charles Alan Wright, Arthur R. Miller & Mary K. Kane, Fed. Practice and Procedure § 1446, at 432-34 (3d ed. 2012)).   See Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 368 n.3 (1978)("[A] third-party defendant may not be impleaded merely because he may be liable to the plaintiff." (emphasis in original));   Admin. Comm. of the Wal-Mart Assocs. Health & Welfare Plan v. Willard, 216 F.R.D. 511, 513-14 (D. Kan. 2003)("[A] defendant may not contend that another person is liable directly to the plaintiff.   Rather, the rule allows a defendant to bring in parties if liability may be passed on to the impleaded third-party.").

## NEW MEXICO LAW REGARDING JOINT-AND-SEVERAL LIABILITY

New Mexico law has adopted a comparative negligence regime, and recognizes joint-and-several liability in only limited, and specifically defined, circumstances.   The move to a comparative negligence regime began with the Supreme Court of New Mexico's ruling in Scott v. Rizzo, 96 N.M. 682, 634 P.2d 1234.   In that case, the Supreme Court of New Mexico pronounced that contributory negligence, i.e., the doctrine that a plaintiff's recovery in tort is completely barred if the plaintiff's fault contributed to the damages suffered, had "long since

reached that point of obsolescence, and was not [a rule] made or sanctioned by the legislature, but . . . depends for its . . . continued viability upon the common law."  96 N.M. at 687, 634 P.2d at 1239 (internal citations omitted).  The Supreme Court of New Mexico established a regime of comparative fault which, rather than barring a plaintiff's recovery completely if the plaintiff was at fault, allows liability for damages to be split amongst negligent actors who contribute to a harm suffered.  See 96 N.M. at 688, 634 P.2d at 1240.  The Supreme Court of New Mexico stated:

> The thrust of the comparative negligence doctrine is to accomplish[:] (1) apportionment of fault between or among negligent parties whose negligence proximately causes any part of a loss or injury[;] and (2) apportionment of the total damages resulting from such loss or injury in proportion to the fault of each party.

96 N.M. at 688, 634 P.2d at 1240.  Not long after Scott v. Rizzo, the Court of Appeals of New Mexico held that "joint and several liability is not to be retained in our pure comparative negligence system on a theory of one indivisible wrong.  The concept of one indivisible wrong, based on common law technicalities, is obsolete, and is not to be applied in comparative negligence cases in New Mexico."  Bartlett v. N.M. Welding Supply, Inc., 98 N.M. 152, 158, 646 P.2d 579, 585 (Ct. App. 1982).

The New Mexico Legislature codified the principles of Scott v. Rizzo and Bartlett v. New Mexico Welding Supply, Inc. in 1987.  See Reichert v. Atler, 117 N.M. 628, 635, 875 P.2d 384, 391 (Ct. App. 1992)("Following our Supreme Court's decision in Scott . . . our legislature enacted legislation continuing the doctrine of joint and several liability in certain situations." (citing N.M.S.A. 1978, § 41-3A-1 (2012)).  The codification of these principles, N.M.S.A. 1978, § 41-3A-1, provides:

> In any cause of action to which the doctrine of comparative fault applies, the doctrine imposing joint and several liability upon two or more wrongdoers whose conduct proximately caused an injury to any plaintiff is abolished except as otherwise provided hereafter.  The liability of any such defendants shall be several.

N.M.S.A. 1978, § 41-3A-1(A).  The same section further provides that a defendant who is severally liable shall be liable only for the amount of harm that defendant's damage caused, and not jointly liable for any harm another party caused:

> In causes of action to which several liability applies, any defendant who establishes that the fault of another is a proximate cause of a plaintiff's injury shall be liable only for that portion of the total dollar amount awarded as damages to the plaintiff that is equal to the ratio of such defendant's fault to the total fault attributed to all persons, including plaintiffs, defendants and persons not party to the action.

N.M.S.A. 1978, § 41-3A-1(B).  The Supreme Court of New Mexico has applied this section to mean that, "[u]nder our comparative negligence system, each negligent party is charged an amount representing its percentage of fault."  Gutierrez v. City of Albuquerque, 1998-NMSC-027, ¶ 11, 125 N.M. 643, 964 P.2d 807.  Comparative negligence limits a parties' liability in such a way that joint-and several-liability does not: "[A]ll parties [are] fully responsible for their own respective acts to the degree that those acts have caused harm," and a "jury must ascertain the percentage of negligence of all participants to an occurrence," so that no party is held liable under comparative negligence for the harm that party did not inflict.  Garcia v. Gordon, 2004-NMCA-114, ¶ 8, 136 N.M. 394, 98 P.3d 1044 (citing Bartlett v. N.M. Welding Supply, Inc., 98 N.M. at 159, 646 P.2d at 586)).

The same statute reserves the application of joint-and-several liability to specific situations:

> (1) to any person or persons who acted with the intention of inflicting injury or damage;

(2) to any persons whose relationship to each other would make one person vicariously liable for the acts of the other, but only to that portion of the total liability attributed to those persons;

(3) to any persons strictly liable for the manufacture and sale of a defective product, but only to that portion of the total liability attributed to those persons; or

(4) to situations not covered by any of the foregoing and having a sound basis in public policy.

N.M.S.A. 1978, § 41-3A-1(C).

The exception for situations "having a sound basis in public policy," has been applied in very limited situations.  Saiz v. Belen Sch. Dist., 113 N.M. 387, 400, 827 P.2d 102, 115 (1992)(noting that the Supreme Court of New Mexico had not had an occasion to apply the exception in section (C)(4) until 1992).  In Saiz v. Belen Sch. Dist., the Supreme Court of New Mexico held a school district jointly and severally liable for the negligence of an independent contractor, whose negligent installation of a high-voltage supply line, in an area where the public was known to congregate, caused the death of a young boy.  See 113 N.M. at 391, 827 P.2d at 106.  The court applied the public policy exception under N.M.S.A. 1978, § 41-3A-1(C)(4), because the "peculiar risks of harm created by locating a high-voltage electrical supply line in an area of public accommodation" warranted holding the school district jointly and severally liable. 113 N.M. 387 at  391, 827 P.2d at 106.  The court held that, when precautions are not taken to protect the public against an inherent danger, the school district, as an employer, may be held jointly and severally liable for the independent contractor's negligence, because the danger to the public in this particular situation is so high.  See 113 N.M. at 400, 827 P.2d at 106.

## NEW MEXICO LAW REGARDING STRICT PRODUCTS LIABILITY

"Under the 'product liability' claim, a supplier in the business of putting a product on the market is liable for harm caused by an unreasonable risk of injury resulting from a condition of the product or from a manner of its use."  N.M.R.A., Civ. UJI 13-1406.  See Stang v. Hertz Corp., 83 N.M. 730, 497 P.2d 732 (1972);  Trujillo v. Berry, 106 N.M. 86, 87 n.1, 738 P.2d 1331, 1333 n.1 (Ct. App. 1987)(stating that "the purpose behind the strict products liability doctrine is to allow an injured user . . . to recover against a supplier . . . without the requirement of proving negligence.").  For a plaintiff to recover under strict products liability, the plaintiff must prove:

> (1) that the product was sold in a defective condition unreasonably dangerous to the user or consumer or to his property;

> (2) that the seller was engaged in the business of selling such a product; and

> (3) that the product was expected to and did reach the consumer without substantial change in the condition in which it was sold.

Standhardt v. Flintkote Co., 84 N.M. 796, 803, 508 P.2d 1283, 1290 (1973).  "Seller" is not an exclusive, restrictive term for identifying potential defendants in a strict products liability action. New Mexico's Uniform Jury Instructions use the term "supplier" to identify a liable party under strict products liability, and the term is used with particular purpose.  N.M.R.A., Civ. UJI 13-1406 cmt.  The committee commentary to the jury instruction states that "certain commercial promotions or other transactions do not involve the business of selling a product, [thus] the committee chose 'business of putting the product on the market,'" rather than simply "seller." N.M.R.A., Civ. UJI 13-1406 cmt.  The committee stated that "supplier" captures the Supreme Court of New Mexico's rationale for adopting strict products liability, better than "seller,"

because holding those who put a defective product on the market liable serves the risk-balancing goal of strict products liability.  N.M.R.A., Civ. UJI 13-1406 cmt. (citing Escola v. Coca Cola Bottling Co. of Fresno, 24 Cal. 2d 453, 465, 150 P.2d 436, 440-41 (1944) for its discussion of risk-distribution, in which the Supreme Court of California states that: "public policy demands that responsibility be fixed wherever it will most effectively reduce the hazards to life and health inhere in defective products that reach the market").

While the Supreme Court of New Mexico has allowed plaintiffs to recover from manufacturers, retailers, and wholesalers, New Mexico courts have specifically declined to hold an employer strictly liable for harm caused by a product that employees use in their course of work.  Compare Aalco Mf. Co. v. City of Espanola, 95 N.M. 66, 67, 618 P.2d 1230, 1231 (1980)(stating that strict liability applies to manufacturers, wholesalers, and retailers), with Trujillo v. Sonic Drive-In/Merritt, 1996-NMCA-106, ¶ 29, 122 N.M. 359, 924 P.2d 1371 ("[W]e are not persuaded that, under the doctrine of strict products liability, Employer would be considered the supplier . . . thus making it strictly liable for injuries caused by a defect in [an ice cream machine].").  In Trujillo v. Sonic Drive-In/Merritt, the Court of Appeals of New Mexico cited N.M.R.A., Civ. UJI 13-1406, and held that an employer could not be held strictly liable for the injuries a defective ice-cream machine caused to employees, because the employer was not a "supplier" of the machine.  1996-NMCA-106, ¶¶ 29-30, 122 N.M. 359, 924 P.2d 1371.  The Court of Appeals of New Mexico distinguished a prior case that held that the operator of a car wash could be strictly liable for the injuries that machinery used at the car wash inflicted on a customer.  See 1996-NMCA-106, ¶¶ 29-30, 122 N.M. 359, 924 P.2d 1371 (citing Trujillo v. Berry, 106 N.M. 86, 738 P.2d 1331(holding that a car-wash operator may be strictly liable for

injuries caused by machinery used on its property, if a trial court determines that the car-wash operator was a "supplier" of the defective machine)). The Court of Appeals of New Mexico explained that the prior case "would only have [imposed strict products liability] if the car-wash defendant was later determined by the trial court to be a supplier," a determination which the trial court did not make in that case. 1996-NMCA-106, ¶ 29, 122 N.M. 359, 924 P.2d 1371. The Court of Appeals of New Mexico ruled, thus, that the employer was not strictly liable for owning a defective machine which inflicted injuries on an employee while the employee operated it. See 1996-NMCA-106, ¶¶ 29-30, 122 N.M. 359, 924 P.2d 1371.

The Court has interpreted New Mexico strict-products liability law to foreclose recovery against parties that do not place an allegedly defective product on the market. See Provencio v. Ford Motor Co., No. CIV 05-623 JB/ACT, 2005 WL 3662957, at *8 (D.N.M., 2005)(Browning, J.). The Court explained that, in Arenivas v. Continental Oil Co., 102 N.M. 106, 692 P.2d 31 (Ct. App. 1983), an operator and part-owner of an oil field was not the supplier of a pumping unit used on the land, because it "did not in any way place the pumping unit in the stream of commerce." 2005 WL 3662957, at *8 (quoting Arenivas v. Continental Oil Co., 102 N.M. at 109, 692 P.2d at 34). The Court also explained that, in Livingston v. Begay, 98 N.M. 712, 652 P.2d 734 (1982), the Supreme Court of New Mexico concluded that "a motel operator is not strictly liable for defects in the fixtures and furnishings of the rooms he holds out to the public," because the motel operator has not introduced those items into the "stream of commerce." 2005 WL 3662957, at *8 (quoting Livingston v. Begay, 98 N.M. at 716-17, 652 P.2d at 739). "The thread that binds these cases is that, in each case, the alleged supplier did not sell the defective product to anyone." 2005 WL 3662957, at *8. Accordingly, a party who does not sell or

otherwise place an allegedly defective product in the stream of commerce may not be strictly liable for any alleged harm the product caused, and, thus, may not be jointly and severally liable for harm the product causes under New Mexico's strict products liability law.  See Livingston v. Begay, 98 N.M. at 716-17, 652 P.2d at 739.

### RELEVANT NEW MEXICO LAW REGARDING INDEMNIFICATION, JOINT-AND-SEVERAL LIABILITY, AND CONTRIBUTION

Indemnification can take several forms in New Mexico.  "Traditional indemnification grants the person who has been held liable for another's wrongdoing an all-or-nothing right of recovery from a third party, such as the primary wrongdoer."  N.M. Pub. Sch. Ins. Auth. v Arthur J. Gallagher & Co., 2008-NMSC-067, ¶ 10, 145 N.M. 316, 198 P.3d 342 (citing In re Consolidated Vista Hills Retaining Wall Litig., 119 N.M. 542, 545, 893 P.2d 438, 441 (1995)). "Under traditional indemnification an indemnitee is entitled to be made whole by a third party such as the primary wrongdoer."  In re Consolidated Vista Hills Retaining Wall Litig., 119 N.M. at 545, 893 P.2d at 441 (citing Rio Grande Gas Co. v. Stahmann Farms, Inc., 80 N.M. 432, 436, 457 P.2d 364, 368 (1969)).  New Mexico also recognizes proportional indemnification, which allows defendants to recover from a third-party for the portion of a plaintiff's loss which the third-party's conduct caused, even when the law does not apportion fault amongst tortfeasors under a theory of comparative fault.  "When applicable, proportional indemnification allows a defendant to seek partial recovery form another for his or her fault."  N.M. Pub. Sch. Ins. Auth. v. Arthur J. Gallagher & Co., 2008-NMSC-067, ¶ 10, 145 N.M. 316, 198 P.3d 342 (citing In re Consolidated Vista Hills Retaining Wall Litig., 119 N.M. at 552, 893 P.2d at 448).  Last, although joint-and-several liability was, for the most part, abolished in New Mexico when New

Mexico adopted a comparative fault regime, joint-and-several liability has been retained in certain matters by statute.  See N.M.S.A. 1978, § 41-3A-1.

      **1.**      <u>**Traditional Indemnification.**</u>

"The right to indemnification may be established through an express or implied contract, or 'may . . . arise without agreement, and by operation of law to prevent a result which is regarded as unjust or unsatisfactory.'"  <u>In re Consolidated Vista Hills Retaining Wall Litig.</u>, 119 N.M. at 546, 893 P.2d at 442 (quoting W. Page Keeton, <u>Prosser & Keeton on the Law of Torts</u> § 51, at 341 (5th ed. 1984)).  Additionally, the Supreme Court of New Mexico has "observe[d] that no New Mexico case actually has denied indemnification to a passive wrongdoer because of the absence of an independent, preexisting legal relationship."  <u>In re Consolidated Vista Hills Retaining Wall Litig.</u>, 119 N.M. at 546, 893 P.2d at 442.

"In essence, traditional indemnification is a judicially created common-law right that grants to one who is held liable an all-or-nothing right of recovery from a third party."  <u>In re Consolidated Vista Hills Retaining Wall Litig.</u>, 119 N.M. at 545, 893 P.2d at 441.  "The purpose of traditional indemnification is to allow a party who has been held liable without active fault to seek recovery from one who was actively at fault.  Thus the right to indemnification involves whether the conduct of the party seeking indemnification was passive and not active or in pari delicto with the indemnitor."  <u>In re Consolidated Vista Hills Retaining Wall Litig.</u>, 119 N.M. at 546,  893 P.2d at 442.  New Mexico courts have defined "active" and "passive" conduct:

> Active conduct is found if an indemnitee has personally participated in an affirmative act of negligence, was connected with negligent acts or omissions by knowledge or acquiescence, or has failed to perform a precise duty which the indemnitee had a duty to perform.  Passive conduct occurs when the party seeking indemnification fails to discover and remedy a dangerous situation created by the negligence or wrongdoing of another.

In re Consolidated Vista Hills Retaining Wall Litig., 119 N.M. at 547, 893 P.2d at 443.  Where a party fails to discover and remedy a dangerous situation, the conduct is passive; where a party does nothing after discovering the dangerous condition, the conduct is active.  See In re Consolidated Vista Hills Retaining Wall Litig., 119 N.M. at 547, 893 P.2d at 443. Indemnification is appropriate only where the party seeking indemnification was passively negligent; if the party was actively negligent, indemnification is barred.  See In re Consolidated Vista Hills Retaining Wall Litig., 119 N.M. at 546, 893 P.2d at 442.

       2.      **Proportional Indemnification.**

In addition to traditional indemnification, New Mexico also recognizes what is called proportional indemnification.  In line with New Mexico's general policy favoring the equitable apportionment of fault, the Supreme Court of New Mexico in In re Consolidated Vista Hills Retaining Wall Litig. "adopt[ed] the doctrine of proportional indemnification under which a defendant who is otherwise denied apportionment of fault may seek partial recovery from another at fault."  In re Consolidated Vista Hills Retaining Wall Litig., 119 N.M. at 552, 893 P.2d at 448.  Proportional indemnification goes hand-in-hand with New Mexico's adoption of comparative fault.

> [T]o establish an equitable system in which a defendant who cannot raise the fault of a concurrent tortfeasor as a defense because of the plaintiff's choice of remedy, we adopt the doctrine of proportional indemnification . . . [to fill] a void in the overall picture that contemplates proration of liability among all those at fault. . . . .  By embracing proportional indemnification, this Court takes comparative fault and several liability another logical step.

In re Consolidated Vista Hills Retaining Wall Litig., 119 N.M. at 552-53, 893 P.2d at 448-49.

Proportional indemnification applies when the one seeking indemnification "has been adjudged liable for full damages on a third-party claim that is not susceptible under law to

proration of fault among joint tortfeasors." In re Consolidated Vista Hills Retaining Wall Litig.,
119 N.M. at 552, 893 P.2d at 448. "[P]roportional indemnification applies only when
contribution or some other form of proration of fault among tortfeasors is not available." In re
Consolidated Vista Hills Retaining Wall Litig., 119 N.M. at 552-53, 893 P.2d at 448-49
("[P]roportional indemnification does not apply when [the Uniform Contribution Among
Tortfeasors Act, N.M.S.A. 1978, § 41-3-1 - 8] provides for proration of damages among joint
tortfeasors."). For example, actions for negligence are governed by comparative fault, which
apportions fault among tortfeasors, so traditional indemnity principles apply because each
tortfeasor is liable only for his or her share of the fault and will never pay more damages than his
or her share. See In re Consolidated Vista Hills Retaining Wall Litig., 119 N.M. at 552, 893
P.2d at 448. On the other hand, when a plaintiff chooses to sue under breach of contract, a
defendant "should be able to seek proportional indemnification for that percentage of fault
attributable to" another. In re Consolidated Vista Hills Retaining Wall Litig., 119 N.M. at 552-
53, 893 P.2d at 448-49.

### 3.   Strict Products Liability and Contribution.

Joint-and-several liability remains viable for strict products liability actions. See
N.M.S.A. 1978, § 41-3A-1(C)(3).

> For all civil actions initially filed on or after July 1, 1987, the recent enactment of
> 1987 N.M. Laws, ch. 141, § 1, applies joint and several liability "(3) to any
> persons strictly liable for the manufacture and sale of a defective product, but only
> to that portion of the total liability attributed to those persons."

Trujillo v. Berry, 106 N.M. at 87 n.1, 738 P.2d at 1333 n.1 (quoting N.M.S.A. 1978, § 41-3A-
1(C)(3)). Contribution is a statutorily-provided remedy amongst joint tortfeasors under
N.M.S.A. 1978, § 41-3-2 (2012):

-27-

A. The right of contribution exists among joint tortfeasors.

B. A joint tortfeasor is not entitled to a money judgment for contribution until he has by payment discharged the common liability or has paid more than his pro rata share thereof.

C. A joint tortfeasor who enters into a settlement with the injured person is not entitled to recover contribution from another joint tortfeasor whose liability to the injured person is not extinguished by the settlement.

D. A pro rata share shall be the portion of the total dollar amount awarded as damages to the plaintiff that is equal to the ratio of each joint tortfeasor's percentage of fault to the total percentage of fault attributed to all joint tortfeasors.

N.M.S.A. 1978, § 41-3-2.  A "joint tortfeasor means two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them."  N.M.S.A. 1978, § 41-3-1 (2012)(internal quotation marks omitted).

## <u>ANALYSIS</u>

Lindemann Recycling does not have appropriate grounds to implead Las Cruces.  In her complaint, Lopez brings claims of product liability against Lindemann Recycling.  These claims will either sound in negligence or strict products liability.  If Lopez succeeds in showing that Lindemann Recycling was negligent, Lindemann Recycling may reduce its liability by Las Cruces' comparative negligence, if any.  It is not necessary for Las Cruces to be in the case for Lindemann Recycling to benefit from the negligence claim, because Lindemann Recycling can benefit from comparative negligence by trying Las Cruces' empty chair.  If Lopez brings a claim in negligence against Las Cruces, which she has not, Lindemann Recycling would profit from the doctrine of comparative negligence and would not be liable for any harm Lindemann Recycling's actions or omissions did not inflict.  Last, if Lopez succeeds in strict products

liability against Lindemann Recycling, the law does not allow Lindemann Recycling to seek contribution or indemnification from Las Cruces, because, under New Mexico law, Las Cruces is not a supplier that may be strictly liable for defects in the Ram II baler.  Accordingly, Las Cruces cannot be liable to Lindemann Recycling on any of the theories Lopez alleges against it.  Based on the facts that Lindemann Recycling has alleged, Las Cruces would be liable to Lopez, if liable at all.  Lindemann Recycling's impleading of Las Cruces, with the present claims, is, thus, improper, and the Court will dismiss Lindemann Recycling's Third-Party Complaint.

**I.     LINDEMANN RECYCLING HAS NOT STATED A CLAIM UPON WHICH IT CAN SEEK INDEMNIFICATION OR CONTRIBUTION FROM LAS CRUCES FOR LAS CRUCES' NEGLIGENCE.**

Lindemann Recycling is afraid that it will be held jointly and severally liable for Las Cruces' negligence in causing Clark's death.  <u>See</u> Third Party-Complaint ¶ 32, at 7.  Lindemann Recycling argues that the Court should not dismiss its Third-Party Complaint, because, at a later point, Lindemann Recycling may be found jointly and severally liable for Las Cruces' negligence, and Lindemann Recycling wants to keep Las Cruces in this case so that Lindemann Recycling may seek indemnification from Las Cruces in the future.  <u>See</u> Third-Party Complaint ¶ 30, at 6.  Lindemann Recycling asserts that there is no controlling authority in New Mexico law that forecloses Lindemann Recycling from being held jointly and severally liable for Las Cruces' negligence.  <u>See</u> Tr. at 16:22-17:5 (Matzke).  Las Cruces contends that New Mexico law allows for joint-and-several liability only in actions where the New Mexico Legislature has specifically retained the doctrine, and that negligence is not one of those actions.  <u>See</u> Memo. in Support of MTD at 3 (citing N.M.S.A. 1978, § 41-3A-1(A) - (G)).  Las Cruces thus argues that the Court should dismiss Lindemann Recycling's Third-Party Complaint, because Lindemann Recycling's

fear of being held liable for Las Cruces' actions or omissions will not be realized under New Mexico's doctrine of comparative negligence.  Las Cruces contends that, under comparative negligence, Lindemann Recycling would be liable only for the harm attributed to Lindemann Recycling's negligence.  See Memo. in Support of MTD at 3.  The Court agrees with Las Cruces.

For close to twenty years, New Mexico has used the doctrine of comparative negligence to apportion fault amongst tortfeasors whose negligence concurrently contributes to the harm a plaintiff suffers.  See Scott v. Rizzo, 96 N.M. at 687, 634 P.2d at 1239 (holding the contributory negligence has "long since reached that point of obsolescence); Bartlett v. N.M. Welding Supply, Inc., 98 N.M. at 158, 646 P.2d at 585 (holding that the concept of "one indivisible wrong" that gave rise to joint-and-several liability is "obsolete").  This move to comparative negligence, which first came through judicial development in New Mexico, was later reflected in the Legislature's adoption of N.M.S.A. 1978, § 41-3A-1, which provides that comparative fault shall govern all actions in negligence unless the statute specifically states otherwise.  See N.M.S.A. 1978, § 41-3A-1(A)("[T]he doctrine imposing joint and several liability upon two or more wrongdoers whose conduct proximately caused an injury to any plaintiff is abolished except as otherwise provided hereafter.").  In contrast to joint-and-several liability, which holds a negligent party liable for all of the harm suffered, comparative negligence apportions fault amongst negligent parties whose negligence proximately caused any part of a loss or injury, so that the total amount of damages attributed to a party are proportionate to that party's fault.  See Scott v. Rizzo, 96 N.M. at 688, 634 P.2d at 1240.  Although New Mexico courts have abolished joint-and-several liability in negligence, New Mexico courts allow parties to raise comparative

negligence as an affirmative defense, even if the negligent third-party is not presently in the

action.  See Wheeler Peak, LLC v. L.C.I.2, Inc., No. CIV 07-1117 JB/WDS, 2008 WL 6045576,

at *10 (D.N.M. 2008)(Browning, J.)("Comparative negligence is apparently an affirmative

defense, not an independent cause of action.")[4]; Tipton v. Texaco, Inc., 103 N.M. 689, 692, 712

---

[4] In Wheeler Peak, LLC, v. L.C.I.2., Inc., the Court was presented with a defendant's
motion to amend its third-party complaint to allege claims that a third-party designer's
negligence caused harm to the defendant contractor, and that the designer was comparatively
negligent in its work.  See 2008 WL 6045576, at **1-3.  The Court allowed the contractor to
amend its third-party complaint to allege claims of negligence and indemnification, but the Court
ruled that amending the complaint to state a cause of action for comparative negligence is
"unnecessary and inappropriate . . . particularly as the Court is allowing [the defendant] to
implead [the third-party] on the grounds of negligence."  2008 WL 6045576, *10.  The Court
did not prohibit the contractor from asserting that the designer's comparative negligence should
offset any of the contractor's liability to the plaintiff, but the Court determined that it was
"unnecessary and inappropriate to plead comparative negligence as a cause of action."  2008 WL
6045576, at * 10.  The Court cited Tipton v. Texaco, Inc., and noted that New Mexico case law
is "somewhat unclear" regarding whether comparative negligence is an independent cause of
action that allows for impleader or an affirmative defense, for which impleader would be
inappropriate.  2008 WL 6045576, n. 4 *10.  The Court explained that the New Mexico courts
have allowed a party to raise the comparative negligence of non-parties both as an affirmative
defense, and as a basis to implead a non-party.  See 2008 WL 6045576, at *10 (citing Jaramillo
v. Kellogg, 126 N.M. 84, 86-87, 966 P.2d 792, 794-95 (Ct. App. 1988); Tipton v. Texaco, Inc.,
103 N.M. 689, 692, 712 P.2d 1351, 1354 (1985)).  The Court did "not address the particularities
of the comparative negligence doctrine," however, because the Court allowed the contractor to
implead the designer on the basis of the designer's negligence, and the Court further determined
that the contractor could raise, under New Mexico's comparative fault regime, the designer's
comparative negligence regardless whether that claim allowed the contractor to implead the
designer.  Wheeler Peak, LLC, v. L.C.I.2., Inc., 2008 WL 6045576, at *10 & n.4 ("The Court is
not forbidding LCI2 from employing a comparative negligence defense -- it is simply
unnecessary and inappropriate to plead comparative negligence as a cause of action, particularly
as the Court is allowing LCI2 to implead de la Torre on the grounds of negligence.").
        Wheeler Peak, LLC, v. L.C.I.2., Inc., is distinguishable from this matter, because, unlike
the contractor in Wheeler Peak, LLC, v. L.C.I.2., Inc., which alleged that the designer's
professional negligence and negligent misrepresentation caused the contractor harm, see 2008
WL 6045576, at *6, Lindemann Recycling has not alleged that Las Cruces' negligence caused
Lindemann Recycling harm.  Lindemann Recycling contends that Las Cruces' negligence
"directly and proximately caused or contributed to cause the injuries and damages alleged by
Plaintiff in the Complaint," specifically, the harm resulting from Clark's death in the Ram II
baler.  Third-Party Complaint ¶ 30, at 6.  Accordingly, unlike the contractor in Wheeler Peak,
LLC, v. L.C.I.2., Inc., Lindemann Recycling has alleged that Las Cruces is liable for its
negligence to Lopez, the plaintiff in this matter, and Lindemann Recycling has not alleged that

P.2d 1351, 1354 (1985)("[U]nder <u>Bartlett</u>, negligence can be allocated to a third party without the participation of the third-party in the suit.").

Under New Mexico's law of comparative negligence, Lindemann Recycling cannot be held jointly and severally liable for Las Cruces' negligence, in operating the transfer station or otherwise, that might have contributed to Clark's death. If Lopez succeeds in proving Lindemann Recycling was negligent, Lindemann Recycling would only be liable, severally, for the portion of Lopez' harm which Lindemann Recycling's conduct caused. New Mexico's comparative fault regime apportions fault severally amongst joint tortfeasors; there is no basis for the fact finder to hold Lindemann Recycling liable, jointly, for damages it did not cause. See N.M.S.A. 1978, § 41-3A-1(A)("In any cause of action to which the doctrine of comparative fault applies . . . . [t]he liability of any . . . defendants shall be several."). This form of several liability would allow the fact finder to apportion fault to Las Cruces even if it is not a party to the case.

In <u>Bartlett v. N.M. Welding Supply, Inc.</u>, the Honorable Joe Wood, Court of Appeals of New Mexico Judge wrote for a unanimous panel in ruling that a jury was properly instructed to apportion fault amongst two tortfeasors: (i) a defendant, the driver of an automobile which collided the plaintiff's car from behind; and (ii) an unknown driver of an automobile, who was not a party to the case and whose maneuvers caused the plaintiff to hit her brakes, which led to the defendant's collision with the plaintiff's car. The trial court instructed the jury to apportion fault according to the negligence of the defendant and of the unknown driver, notwithstanding that the unknown driver was not party to the case. The Court of Appeals of New Mexico ruled

Las Cruces is liable to Lindemann Recycling, the defendant. The Court must decide in this matter, therefore, whether Las Cruces' comparative negligence in causing Clark's death is a sound basis for Lindemann Recycling to implead Las Cruces.

-32-

that the "trial court properly instructed the jury to consider the negligence and damage resulting from the negligence of the unknown driver," because New Mexico's pure comparative fault regime requires that the defendant may not be held "liable for the entire damage caused by the defendant and the unknown driver."  98 N.M. at 159-60, 646 P.2d at 586-87.  The Supreme Court of New Mexico denied certiorari on appeal, and has since cited the case for the holding that "negligence can be allocated to a third party without the participation of the third-party in the suit."  Tipton v. Texaco, Inc., 103 N.M. at 692, 712 P.2d at 1354.  Accordingly, if Lopez, succeeds in showing that Lindemann Recycling' negligence caused Clark's death, New Mexico's comparative fault regime protects Lindemann Recycling from being held liable for any damages that Las Cruces' actions or omissions caused.  See Wilson v. Gillis, 105 N.M. 259, 261, 731 P.2d 955, 957 (1986), cert. denied, 105 N.M. 230, 731 P.2d 373 (1987)("Just as a jury compares the negligence of an unknown tortfeasor in a comparative negligence case, it can compare the [third-party's] negligence without having them participate as a party.").

New Mexico courts apply a "liberal construction" of the rules of civil procedure so as to allow defendants to implead third-parties on the basis of their comparative negligence.  Tipton v. Texaco, Inc., 103 N.M. at 693, 712 P.2d at 1355.  In Tipton v. Texaco, Inc., a case filed in between Scott v. Rizzo and Bartlett v. N.M. Welding Supply, Inc., the Supreme Court of New Mexico ruled that a defendant may implead third-parties on a theory of comparative negligence, notwithstanding that the third-party's comparative negligence would render it liable to the plaintiff, rather than the defendant/third-party plaintiff.  The Supreme Court of New Mexico recognized that its holding was in tension with the impleader rules, which allow a defendant to implead a third-party that is secondarily liable to a defendant, but not liable to a plaintiff:

-33-

> [P]laintiff and the third-party defendant argued . . . that none of the rules of civil procedure precisely fit defendant's claims against third-parties . . . . [I]t will be necessary that the rules of third-party practice and joinder of missing parties, whether those parties be permissive or necessary, be liberally applied when comparative fault or liability of multiple parties surfaces in the pleadings.

Tipton v. Texaco, Inc., 103 N.M. at 692, 712 P.2d at 1355.  The Supreme Court of New Mexico found that impleading the allegedly comparatively negligent third-party would allow for "affirmative relief, to assure complete disposition, to conserve judicial resources, or to obtain joint tortfeasor contribution . . . ."  103 N.M. at 639, 712 P.2d at 1355.  The Supreme Court reasoned:

> [A]ll tortfeasors should be joined in the jury's determination of apportionment of damages. . .[,] the rules must be adjusted . . . and a third-party complaint that previously would have been allowed under joint tortfeasor contribution theories must now be allowed, under liberal construction of the rules of procedure, to assert a comparative negligence theory . . . in order to assure that each person at fault bears only his proportionate share of liability.

103 N.M. at 695, 712 P.2d at 1356.  The Supreme Court of New Mexico has since cited Tipton v. Texaco, Inc. for its holding that defendants may implead concurrent tortfeasors even though joint-and-several liability no longer applies in negligent actions: "[Tipton v. Texaco, Inc. allows] continued impleader of concurrent tortfeasors, whose liability for contribution was abolished after the adoption of comparative negligence."  Yelin v. Carvel Corp., 119 N.M. 554, 556, 893 P.2d 450, 452 (1995).[5]  Accordingly, if this case were in New Mexico state court, Lindemann

---

[5] Seemingly in tension with Tipton v. Texaco, Inc., in Wilson v. Gillis, the Court of Appeals of New Mexico held that impleading a third-party on a claim of comparative negligence was improper.  The Court of Appeals of New Mexico reconciled this difference by explaining that a defendant could not rely on Tipton v. Texaco, Inc. to implead an allegedly comparatively negligent third party where the third-party had already settled with the plaintiff.  105 N.M. at 261, 731 P.2d at 957.  Because the third party had settled and, thus, had "no potential liability," the Court of Appeals of New Mexico found that Tipton v. Texaco, Inc., did not allow the defendant to implead the third party, because Tipton v. Texaco, Inc., applies only to cases where the "third-party defendant is potentially liable."  105 N.M. at 261, 731 P.2d at 957.

Recycling would likely be able to implead Las Cruces on the basis of its comparative negligence in causing Clark's death.

In federal court, on the other hand, the rules do not empower defendants to implead third-parties on the basis of their liability to a plaintiff.  "Under the <u>Erie [v. R.R. Co. v. Tompkins</u>, 304 U.S. 64 (1938),] doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." <u>Gasperini v. Ctr. for Humanities, Inc.</u>, 518 U.S. 415, 427 (1996).  <u>See</u> <u>Bhandari v. VHA S.W. Cmty. Health Corp.</u>, No. CIV 09-0932 JB/GBW, 2011 WL 1336512, at *25 n.13 (D.N.M. Mar. 30, 2011)(Browning, J.)(same).  The Tenth Circuit and the Supreme Court of New Mexico have recognized that impleader practice is a rule of procedure, and not substantive law.  <u>See</u> <u>United States v. Acord</u>, 209 F.2d 709, 712 (10th Cir. 1954)(recognizing that rule 14 was adopted "in keeping with the purpose of the Federal Rules of Civil Procedure to simplify and expedite procedure"); <u>Tipton v. Texaco, Inc.</u>, 103 N.M. at 692-93, 712 P.2d at 1354-55 (holding that procedural rules, including the rules governing impleading, "must be adjusted and made suitable to fit the changes in the substantive law").  In a similar situation, the Tenth Circuit has ruled that a defendant may not implead third parties on a theory of comparative negligence under Kansas state law.  <u>See</u> <u>Hefley v. Textron, Inc.</u>, 713 F.2d 1487 (10th Cir. 1983).

In <u>Hefley v. Textron, Inc.</u>, the plaintiffs, United States Army national guardsmen, brought claims of negligence and strict liability against the manufacturer of a helicopter in which the plaintiffs were occupants when it crashed.  The manufacturer attempted to implead the United States of America, the State of Kansas, and a commanding officer, seeking indemnification, contribution, discovery, and assessment of the third parties' proportionate fault under Kansas' comparative negligence statute.  <u>See</u> 713 F.2d at 1489-90.  The trial court dismissed the third

parties on the basis of sovereign immunity.  See 713 F.2d at 1490.  On appeal, the manufacturer

argued that it could not discover evidence necessary to apportion fault amongst the manufacturer

and the third parties if the third parties were not joined in the matter.  The Tenth Circuit first

noted that Kansas has adopted comparative negligence, giving "a defendant [] a right to have the

fault of all participants in an occurrence measured in one action, and to reduce his or her liability

by the amount of fault attributable to the other participants, irrespective of whether they are

joined as parties or are immune from liability."  713 F.2d at 1496.  The Tenth Circuit explained

that, "to the extent that inclusion of the United States as a party would allow more extensive

discovery, which presumably would provide evidence that would persuade the jury to assign a

lesser degree of fault to [the manufacturer]," such concerns were "trivial" in light of Kansas'

comparative negligence regime, because "[i]n no event will [the manufacturer] be liable for more

than its proportionate share of fault."  713 F.2d at 1497.  The Tenth Circuit ruled, therefore, that

the manufacturer's substantive right to not be held liable for more damage than its actions caused

would not be threatened, because Kansas law requires that plaintiffs' damages be allocated

amongst the manufacturer and any other concurrent tortfeasors, irrespective whether the

tortfeasors are joined in the suit.  See 713 F.3d at 1497.  Moreover, the Tenth Circuit ruled that

rule 14 "[o]n its face . . . does not apply to [the manufacturer's] claim."  713 F.2d at 1498.  The

Tenth Circuit explained that, because "Kansas has eliminated contribution and indemnity among

joint tortfeasors in comparative negligence cases," the third-party defendants could not be liable

to the manufacturer for the plaintiffs' claims against it.  713 F.2d at 1498.  The Tenth Circuit

further ruled that a Kansas statute, which allowed defendants to join allegedly comparatively

negligent third parties to a suit, "is procedural, is not outcome determinative, and is not binding

on the federal courts."  713 F.2d at 1497 (citing Kan. Stat. Ann. § 60-148(a)(c)).

> It is well established . . . that impleader is proper only where the third-party
> defendant's liability is "in some way derivative of the outcome of the main
> claim."  United States v. Joe Grasso & Son, Inc., 380 F.2d 749, 751 (5th Cir.
> 1967).  See also, 6 Wright & Miller § 1446 at 246-48 (1971).  Textron does not,
> and indeed can not, assert that Fry and the United States may be liable to it if the
> plaintiffs in the underlying suit are successful.  Thus, the attempt to use rule 14(a)
> impleader requires that we force a conceptual square peg into a procedural round
> hole.  We are unable to do so.

Hefley v. Textron, Inc., 713 F.2d at 1498.  The Tenth Circuit held, therefore, that, because the

manufacturer had "no right to relief under the substantive law, impleader is proper."  713 F.2d at

1498.

Similarly, here, if Lopez succeeds in showing that Lindemann Recycling's negligence

caused Clark's death, under New Mexico's comparative negligence regime, Lindemann

Recycling could not assert that Las Cruces is liable to it for any of Lopez' claims.  Although

Tipton v. Texaco, Inc. indicates that, in state court, Lindemann Recycling would be allowed to

implead Las Cruces on the basis of its comparative negligence, the Tenth Circuit has ruled that

such procedural mechanisms in the context of comparative negligence are inconsistent with

federal impleader practice, and, therefore, not binding in federal court.  Under the federal rules,

impleading Las Cruces on the basis of its liability to Lopez would "force a conceptual square peg

into a procedural round hole," which the Court is unable to do.  Hefley v. Textron, 713 F.2d at

1498.  If Lopez succeeds in showing that Lindemann Recycling's negligence caused Clark's

death, Lindemann Recycling will not be held liable for any damages its conduct did not cause,

and, therefore, Lindemann Recycling would have no basis on which to implead Las Cruces.

New Mexico's adoption of comparative negligence, however, abolished joint-and-several

liability amongst concurrent tortfeasors, thereby extinguishing any right of contribution which Lindemann Recycling would have against Las Cruces.  See Yelin v. Carvel Corp., 119 N.M. at 556, 893 P.2d at 452 (noting that, amongst concurrent tortfeasors, "liability for contribution was abolished after the adoption for comparative negligence" in New Mexico).  The Court thus finds that Lindemann Recycling has not stated a claim upon which relief may be granted through seeking indemnification or contribution from Las Cruces for any negligence on Las Cruces' part that caused Clark's death.  See Owen Equip. & Erection Co. v. Kroger, 437 U.S. at 368 n. 3 ("[A] third-party defendant may not be impleaded merely because he may be liable to the plaintiff."(emphasis in original)).

## II.    LINDEMANN RECYCLING HAS NOT STATED A CLAIM UPON WHICH IT CAN INDEMNIFY LAS CRUCES UNDER STRICT PRODUCTS LIABILITY.

Lopez alleges that Lindemann Recycling is "strictly liable" for Clark's death by selling the Ram II baler.  Lopez Complaint ¶ 24, at 6-7.  Lindemann Recycling does not argue that Las Cruces should be impleaded because Lindemann Recycling will be held jointly and severally liable for Las Cruces' actions under strict products liability.  See Tr. at 17:24-18:3 (Court, Matzke)(the Court inquired if Lindemann Recycling would concede that it "can[not] do anything with the City" on Lopez' strict liability claim, and Lindemann Recycling replied, "that is correct").  Rather, Lindemann Recycling is concerned that N.M.S.A. 1978 § 41-3A-1 does not foreclose such liability.  See Tr. at 18:21-19:3 (Matzke).  Lopez' claim for strict products is an action for which the New Mexico Legislature has reserved joint-and-several liability.  See N.M.S.A. 1978 § 41-3A-1(c).  Lopez does not name Las Cruces as a defendant.  See Lopez Complaint at 1.  Lindemann Recycling has not shown how Las Cruces may be at fault in strict products liability, and Lindemann Recycling thus has not shown how Las Cruces may be liable

-38-

to Lindemann Recycling for indemnification or contribution such that would warrant impleading Las Cruces as a third-party defendant.

A plaintiff in New Mexico may bring an action in strict products liability against an entity that puts an allegedly defective product onto the market.  See Aalco Mf. Co. v. City of Espanola, 95 N.M. at 67, 618 P.2d at 1231 (finding that sellers, wholesalers, and retailers alike may be liable in strict products liability).   Joint-and-several liability is available against defendants in strict products liability, and thus a passive defendant is still liable for all of the harm a plaintiff suffers; the passive defendant, however, may indemnify another entity in the chain of supply whose actions caused the harm.  See Wheeler Peak, LLC v. L.C.I.2., Inc., 2009 WL 1562812, at *5-6 (explaining that a passive supplier, who was not negligent in putting a product onto the market, may indemnify a supplier whose negligence caused or failed to prevent the harm inflicted in a strict products liability action).  New Mexico has not, however, allowed a plaintiff to bring a claim in strict products liability against a party who did who did not participate in putting a product onto the market.  See Provencio v. Ford Motor Co., 2005 WL 3662957, at *8 (citing New Mexico authorities to hold that an entity that did not sell a product may not be held strictly liable for defects in the product).

Although Lindemann Recycling is afraid that it will be held jointly and severally liable for harm that Las Cruces caused, Lindemann Recycling has not shown how Las Cruces' actions are connected to Lindemann Recycling's potential strict products liability to Lopez.  Lindemann Recycling alleges that Las Cruces owned and operated the transfer station where Clark died. Lindemann Recycling asserts that Las Cruces breached a duty of care in maintaining the safety of the transfer station, including maintaining the Ram II baler.  Lindemann Recycling does not,

however, allege that Las Cruces' participation in putting the Ram II baler onto the market caused Clark's death.  The liability which Lindemann Recycling is attempting to impart to Las Cruces is similar to that which the court in Trujillo v. Sonic Drive-In/Merritt rejected: strict products liability as to an employer for owning an allegedly defective machine that caused an employee's injury.  See 122 N.M. at 365-66, 924 P.2d at 1377-78.  The Court knows of no New Mexico authority which would allow an entity that did not put a product onto the market to be found liable in strict products liability.  Lindemann Recycling has thus not shown how Las Cruces would be liable to Lindemann Recycling for indemnification or contribution if Lindemann Recycling is found liable to Lopez in strict products liability.

Lindemann Recycling's Third-Party Complaint does not show that Las Cruces is liable to Lindemann Recycling.  Rather, Lindemann Recycling's Third-Party Complaint points to Las Cruces' allegedly negligent actions in operating the transfer station and argues that Las Cruces' negligence caused Clark's death.  If Las Cruces were negligent in causing the harm she alleges caused Clark's death, Las Cruces would be liable to Lopez and not to Lindemann Recycling. Lindemann Recycling therefore has not met the standard for impleading a party under rule 14 on the basis of Las Cruces' liability to Lindemann Recycling, because Lindemann Recycling has not shown that Las Cruces is liable to Lindemann Recycling.  See Owen Equip. & Erection Co. v. Kroger, 437 U.S. at 368 n. 3 ("[A] third-party defendant may not be impleaded merely because he may be liable to the plaintiff."(emphasis in original)).

The Court does not see how Las Cruces' alleged negligence could be apportioned to Lindemann Recycling under joint-and-several liability.  If either Lindemann Recycling's or Las Cruces' negligence were the cause of Clark's death, New Mexico law would allow Lindemann

Recycling to raise comparative negligence and off-set any damages attributed to Lindemann Recycling by Las Cruces' comparative negligence.  On the other hand, if Lindemann Recycling is found under strict products liability to have caused Clark's death, Lindemann Recycling has not shown that Las Cruces is an entity that may be held jointly and severally liable in strict products liability, because Las Cruces is not alleged to have put the Ram II baler onto the market.  Lindemann Recycling thus cannot impute liability to Las Cruces in strict products liability, and Lindemann Recycling therefore cannot seek indemnification from Las Cruces for that claim.  Indeed, Lindemann Recycling agrees that it does not have a claim for indemnification and contribution from Las Cruces in strict products liability.  See Tr. at 17:25-18:3 (Court, Matzke)(the Court inquired if Lindemann Recycling is "conceding you can't do anything with the City," on the strict products liability issue, and Lindemann Recycling responded, "[t]hat is correct. . .").

The Court concludes that, on the basis of Lindemann Recycling's Third-Party Complaint, any liability Las Cruces owes would be to Lopez, and not to Lindemann Recycling.  Lindemann Recycling may not therefore implead Las Cruces on the facts currently before the Court.  The Court will not address Las Cruces' arguments under the Worker's Compensation Act, as the Court finds that Las Cruces' may be dismissed from this action without reaching those issues. The Court will dismiss Lindemann Recycling's Third-Party Complaint without prejudice, so that if in the future, Las Cruces becomes an appropriate party under rule 14, Lindemann Recycling may renew its motion to join Las Cruces.  See Wheeler Peak, LLC v. L.C.I.2, Inc., No. CIV 07-1117 JD/WDS, 2009 WL 1255516, at *6 (D.N.M. 2009)(Browning, J.)(dismissing a third-party

complaint without prejudice so a defendant may renew the motion if impleading the parties under rule 14 becomes appropriate in the future).

**IT IS ORDERED** that: (i) the Third-Party Defendant City of Las Cruces's Motion to Dismiss, filed May 25, 2012 (Doc. 35), is granted; and (ii) Lindemann Recycling Equipment, Inc.'s Third-Party Complaint for Indemnity or Contribution, filed April 26, 2012 (Doc. 32), is dismissed without prejudice.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Janet Santillanes
Janet Santillanes, P.C.
Albuquerque, New Mexico

-- and --

James K. Gilman
Albuquerque, New Mexico

-- and --

James T. Roach
Law Offices of James T. Roach
Albuquerque, New Mexico

  *Attorneys for the Plaintiff*

Craig T. Erickson
Joshua A. Allison
Sheehan & Sheehan, P.A.
Albuquerque, New Mexico

-- and --

Eric W. Matzke
Michael Gonring
Raymond Jamieson
Quarles & Brady LLP
Milwaukee, Wisconsin

> *Attorneys for the Defendants American Baler Company, a foreign corporation; and*
>   *Metso Corporation, a foreign corporation;*
>   *Metso Lindemann, a foreign corporation;*
>   *Lindemann Recycling Equipment, Inc., Defendant and Third-Party Plaintiff*


Paul Maestas
Maestas & Suggett, P.C.
Albuquerque, New Mexico

> *Attorneys for Defendants Don Dickason and Martha Dickason*


Damian L. Martinez
Casey B. Fitch
Holt Mynatt Martinez, P.C.
Las Cruces, New Mexico

> *Attorneys for the Third-Party Defendant City of Las Cruces*